160 N.J. Super. 266 (1978)
389 A.2d 526
JANE DOE ET AL, PLAINTIFF,
v.
BRIDGETON HOSPITAL ASSOCIATION, INC., ET AL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 31, 1978.
*267 Ms. Nadine Taub for plaintiffs.
Mr. William P. Doherty, Jr. for Bridgeton Hospital Association, Inc.
Mr. Joseph D. O'Neill for Newcomb Hospital (Messrs. Shapiro, Eisentat, Capizola, O'Neill & Gabage, attorneys).
Mr. Wayland A. Lucas for Salem County Memorial Hospital.
Mr. John R. Heher for New Jersey Hospital Association as Amicus Curiae (Messrs. Smith, Stratton, Wise & Heher attorneys).
FRANCIS, A.J.S.C.
Plaintiffs and their physicians instituted an action to compel the Bridgeton Hospital Association, the Newcomb Hospital and the Salem County Memorial Hospital to make their facilities available to plaintiffs and their physicians who were members of the staffs of defendant hospitals for the performance of elective abortions during the first trimester of pregnancy. The New Jersey Department of Institutions and Agencies was an original party defendant and was later dropped consensually. After trial the court dismissed the complaint against the three remaining defendant hospitals. 130 N.J. Super. 416 (Law Div. 1974). While the matter was pending unheard in the Appellate Division the Supreme Court, on its own motion and pursuant to R. 2:12-1, certified the matter. 69 N.J. 85 (1975). The court reversed and remanded the cause for the entry of an order in accordance *268 with its opinion. 71 N.J. 478 (1976). The order in effect required the hospitals to admit such elective abortion cases. The United States Supreme Court subsequently denied certiorari.
Most of the opinion of the Supreme Court dealt with the "recognition of the quasi-public status of the hospital and its obligation to serve the public". Reiterating the right of the judiciary to review the policy decisions of such a quasi-public entity and requiring those decisions to meet certain court imposed standards of reasonableness, Greisman v. Newcomb Hospital, 40 N.J. 389 (1963), the court held that the refusal of defendant hospitals to make their facilities available for elective first trimester abortions was an unreasonable policy.
In both defendants' brief and at argument counsel for defendants did not challenge that standard of reasonableness or the finding thereon as far as the present proceeding goes, and nothing further need be said about it.
Late in the Supreme Court opinion the court further recognized that during the pendency of the appeal the act commonly referred to as the "Conscience Law" relating to abortion and sterilization was enacted. N.J.S.A. 2A:65A-1 et seq. That law provides that no hospital shall be required to provide abortion services or procedures, and the refusal to perform or assist in the performance or provide abortion services shall not constitute grounds for civil or criminal liability, disciplinary action or discriminatory treatment. N.J.S.A. 2A:65A-1 et seq. The court held that to empower a nonsectarian and nonprofit hospital to refuse to permit its facilities to be used for elective abortions would clearly constitute state action, citing Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). The court held that the constitutional right to an abortion was well settled in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and that the State's attempt to frustrate that right would be impermissible state action violative of the constitutional guarantee. The court then went on to *269 construe the statute as not applicable to nonsectarian, nonprofit hospitals, the type we are concerned with herein.
Three recent decisions of the United States Supreme Court was relied upon by defendants as standing for the proposition that the right to an abortion is not absolute, and the state may act accordingly within certain parameters; and that these parameters as enunciated by the three cases include the right of the state action as set forth in the so called "Conscience Law," N.J.S.A. 2A:65A-1 et seq., without the limiting effect placed upon it by our own Supreme Court, i.e. the elimination of nonsectarian and nonprofit hospitals from its purview. In short, defendants here contend that the three United States Supreme Court decisions in effect construe the statute as permissible and constitutional state action, contrary to our own Supreme Court's holding in the matter insofar as it applies to nonsectarian, nonprofit hospitals. Poelker v. Doe, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977); Maher v. Doe, 432 U.S. 526, 97 S.Ct. 2474, 53 L.Ed.2d 534 (1977); Beal v. Doe, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977).
Defendants move under R. 4:50-1(e) and R. 4:50-1(f) to reopen the judgment and in effect to have this court amend its order to give the hospitals the right to deny access pursuant to N.J.S.A. 2A:65A-1 et seq. Plaintiffs dispute the applicability of these rules to the present case. They further state that assuming arguendo the matter may be reopened under either of the rule provisions aforesaid, the three cases relied upon do not, by their holdings, represent a change in the decisional law so as to make the interpretation of N.J.S.A. 2A:65A-1 et seq. permissible state action when applied to the instant defendant hospitals.
It would appear that if Maher; Beal and Poelker, supra, warranted the premise contended by the defendants, N.J.S.A. 2A:65A-1 would then become applicable to nonsectarian, nonprofit hospitals. This would prospectively apply to every nonsectarian, nonprofit hospital in New Jersey other *270 than the three defendant hospitals herein. Thus the three defendant hospitals would be operating under standards of constitutional proportions differently from most of the hospitals in New Jersey. It must be remembered that the individuals actually concerned in the instant case are as a practical matter no longer concerned, and there are no rights of those individual female plaintiffs that can be divested. It would therefore appear inequitable to apply the statute in the way defendants have described. For this reason R. 4:50-1(e) would be appropriate in its application. The aforementioned divergence in the application of the statute would also, I think, call for the application of R. 4:50-1(f) in the interest of uniformity and respect for the even-handed approach that the law must ordinarily take. Theoretically, a contrary decision could result in a deluge of elective abortions thrust upon the three party hospitals herein.
Holding, however, that defendants' motion might be heard on the merits, affords them no relief. The three United States Supreme Court cases cited do not permit the construction of N.J.S.A. 2A:65A-1 as suggested by defendants.
In Maher, supra, the action concerned a Connecticut welfare department regulation limiting state medicaid benefits for first trimester abortions to those that are medically necessary. The Supreme Court in that case held the Equal Protection Clause not applicable since (a) financial need alone does not identify a suspect class; (b) there was no interference with the freedom of choice to terminate the pregnancy, and since that right of choice was not interfered with, the state had limited authority to make a value judgment in favor of childbirth by the allocation of public funds; (c) the elimination of elective abortions from the financial aid provision of the Medicaid regulation was not deemed an infringement of fundamental proportions and therefore did not require the state to show a compelling interest, and (d) the Connecticut regulation had a rational relationship to a legitimate interest in encouraging normal childbirth at full term.
*271 Beal, supra, construed Title XIX of the Social Security Act as not requiring funding of elective abortions as a condition of participation in the Medicaid program established by the act. The court held that to require such funding would statutorily undercut a state's legitimate interest in childbirth and this without any compelling reason. As in Maher, Beal dealt with the question of availability of funding of elective abortions.
In Poelker, supra, the suit was brought against the Mayor of St. Louis and the director of a hospital which was staffed for the most part by teachers and doctors from a Jesuit educational institution. The enunciated directives prohibited elective abortions. After disposing of the equal protection argument, as in Maher, supra, the court held that the essence of the case was the public financing of hospital services, deciding again that the state interest in full-term pregnancies is a matter of judgment and public concern and in no way prevents the exercise of the procreation choice of the person seeking the abortion. As plaintiffs state in their brief,
[T]he pervasive theme of these cases is that in deciding not to make affirmative expenditures to allow women to obtain abortions they could not otherwise afford, governments were in no way interfering with the fundamental procreative choice. In the Supreme Court's view, the state action (or inaction) at issue in these three cases contrasted sharply with state action which "places no obstacles  absolute or otherwise  in the pregnant woman's path to an abortion" [citing Maher, supra].
I am in accord with plaintiffs that Maher; Beal and Poelker in no way disrupt the decisional law on which the Bridgeton order was based. The cases deal simply with the right of a state to make the election to fund or not fund at public expense elective abortions; leaving the resolution of the question within the legislative rather than the judicial domain.
The motion to reopen the judgment is granted and the relief sought by the defendants on the merits is denied.